**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

    Plaintiff,
vs.              **Case No. 00-40126-02-RDR**

FRANCISCO BANDA,

    Defendant.

---

## MEMORANDUM AND ORDER

On May 24, 2005, the court resentenced the defendant. The purpose of this memorandum and order is to memorialize the findings made by the court during the hearing and elaborate upon them.

The defendant entered a guilty plea on May 24, 2001 to conspiracy to distribute 500 grams or more of a mixture containing methamphetamine. He had been charged in six counts of a nine-count superseding indictment along with co-defendants Adam Grabel Guzman and Michael Thomas Albers. On February 4, 2002, the court sentenced the defendant. His guideline range was 292 to 365 months, but the government filed a motion to reduce his sentence pursuant to U.S.S.G. § 5K1.1. His attorney at that time was Mark Works. Mr. Works had filed over 40 objections to the presentence report. Most of the objections were directed at the amount of drugs that were attributable to the defendant. The government had provided evidence to the

probation office about the amount of drugs involved in this case, but had not offered any evidence at the sentencing hearing. Relying upon the findings made in the presentence report, the court rejected the defendant's objections and enhanced his sentence based upon his role in the offense. The court found that the presentence report had correctly calculated the defendant's guideline range and further determined that the defendant was entitled to a reduction of his sentence to 180 months. Co-defendant Guzman received a sentence of 324 months and co-defendant Albers initially received a sentence of 151 months, but it was later reduced to 96 months upon the filing of the government's motion for reduction of sentence pursuant to Fed.R.Crim.P. 35.

The defendant appealed his sentence. In August 2002, the Tenth Circuit affirmed. The defendant then sought rehearing. The Court ultimately determined on January 29, 2004 that this court had not made specific enough findings on the defendant's objections and had improperly adopted the findings made in the presentence report. United States v. Banda, 87 Fed.Appx. 129, 2004 WL 171630 (10th Cir. 2004). The Court remanded for factual findings on the following objections: 3-7, 10-12, 14-15 and 17-29, as well as the following supplemental objections: 3-7. Id., 87 Fed.Appx. at 135. The Court also indicated that we should

clarify our ruling regarding the increase in defendant's offense level as a manager and organizer pursuant to U.S.S.G. § 3B1.1. Id.

Since these events, the United States Supreme Court has issued opinions in Blakely v. Washington, 124 S.Ct. 2531 (June 24, 2004) and United States v. Booker, 125 S.Ct. 738 (Jan. 12, 2005). The defendant argues that these decisions impact substantially the sentence the court should now impose. The defendant initially argues the court should sentence in conformity with Blakely and Booker. According to the defendant, this requires the court to impose a Guidelines sentence without any enhancements based on judge found facts. The defendant asserts that his due process rights would be violated if the court applied the remedial portion of Booker. In the alternative, the defendant argues that if the court applies the remedial portion of Booker, then the court should make all factual determinations that increase his sentence above the guideline sentence based upon a beyond a reasonable doubt standard. The defendant next argues, alternatively, that no matter what evidentiary standard is applied, the evidence does not support an increase in his sentence based upon drug quantity or as a leader or organizer. Finally, the defendant contends that if the court sentences him under the advisory Guidelines

system, then it should consider his extraordinary post-offense rehabilitation and other factors set forth in 18 U.S.C. § 3553(a), 18 U.S.C. § 3661 and 18 U.S.C. § 3582.

The government has responded that the court should sentence the defendant in accordance with post-Booker pronouncements. The government contends the court should apply the Guidelines in an advisory fashion based upon a preponderance of the evidence standard. The government argues that any guideline sentence should be regarded as per se reasonable. The government contends that the evidence supports the drug quantities found in the presentence report and the determination that the defendant is a leader and organizer under U.S.S.G. § 3B1.1(b). Finally, the government had also asserted that, based upon the arguments now raised by the defendant, the court should enhance the defendant's offense level by two levels for obstruction of justice and deny a reduction in his offense level for acceptance of responsibility. The government had contended that the arguments made by the defendant constitute a breach of the plea agreement by denying his involvement and giving conflicting statements concerning his involvement. At the sentencing hearing, however, the government withdrew these contentions.

In examining the legal arguments raised by the defendant in the briefs filed after remand, the court must initially reject

the defendant's argument that his due process rights will be violated by an application of the remedial portions of Booker. The court does not find that the defendant's argument has any merit. Moreover, we fail to find any legal support for it. In Booker and Blakely, the Supreme Court established that, for purposes of the Guidelines, the Sixth Amendment requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S.Ct. at 756. The Booker remedial majority, however, corrected the Sixth Amendment error created through mandatory application of the Sentencing Guidelines by severing the statutory section that required district courts to sentence within the Guidelines range. Booker, 125 S.Ct. at 756-57 (excising 18 U.S.C. § 3553(b)(1)). The district courts now must consult the Guidelines, but they retain discretion to depart from the range recommended by the Guidelines. Id. at 767. The court agrees that Booker should now be applied to the defendant, but we do not believe that Booker changes the sentencing process for the defendant except that the court has some latitude, subject to reasonableness review, to depart from the resulting guideline sentence. See

5

United States v. Magallanez, ____ F.3d ____, 2005 WL 1155913 at * 8 (10th Cir. 2005); see also United States v. Lawrence, ____ F.3d ____, 2005 WL 906582 at * 12 (10th Cir. 2005) ("the Supreme Court's holding in Booker would not have prohibited the district court from making the same factual findings and applying the same enhancements and adjustments to [the defendant's] sentence as long as it did not apply the Guidelines in a mandatory fashion"). Accordingly, the court shall apply the Guidelines in an advisory fashion using a preponderance of the evidence standard to determine the various issues, including relevant conduct and enhancements. The court will consult the Guidelines and then finally determine an appropriate sentence for the defendant pursuant to 18 U.S.C. § 3553.

With this determination, the court shall consider the objections noted by the Tenth Circuit in its opinion of January 29, 2004. In examining the objections, the court has considered the materials provided by the government. These materials consist of statements by Adam Grabel Guzman, Michael Thomas Albers, Timothy Howze, Sharon Michelle Jacob, Matthew M. Patterson, Chester Ray Patrick, Maximo Guzman and the defendant to law enforcement officers or the grand jury.

Many of the objections (objection nos. 3, 4, 15, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29 and supp. objection nos. 3,

6

4, 5, 6 and 7) raised by the defendant concern the quantity of drugs attributable to him or the degree of his participation in the conspiracy. The amount of drugs in this case was calculated from the following material recounted in the presentence report: (1) ten pounds of methamphetamine that Patterson admitted to purchasing from the defendant; (2) 579.14 grams of methamphetamine and 230.78 grams of marijuana seized during controlled purchases on four occasions in April 2000, and once in November 2000, and once in December 2000; (3) 13 ounces of methamphetamine sold to Albers by the defendant in July 1999; (4) five pounds of methamphetamine and 80 pounds of marijuana supplied by the defendant to Albers in September 1999; (5) four pounds of methamphetamine and 58 pounds of marijuana brought to Albers' business on December 31, 1999; (6) 68 pounds of marijuana provided to Albers by Adam Guzman in tires; and (7) 78 pounds of marijuana Albers transported from Dodge City, Kansas to Salina, Kansas for the defendant. These figures add to a total of 20,479.53 grams of methamphetamine and 165,341.18 grams of marijuana. With the conversion of these amounts to marijuana, the total becomes 41,070.32 kilograms of marijuana. Based upon that amount, the defendant's base offense level is 38.

The standards applicable to quantity determinations were set

forth in United States v. Garcia, 994 F.2d 1499, 1508-09 (10th Cir. 1993):

> The government has the burden of proving the quantity of drugs for sentencing purposes by a preponderance of the evidence. U.S. v. Reyes, 979 F.2d 1406, 1410 (10th Cir. 1992). In determining the quantity of drugs for the base offense level calculation, Defendant is responsible for "all quantities . . . with which he was directly involved, and . . . all reasonably foreseeable quantities . . . that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, comment (n. 2) (Nov. 1992). [If] [t]he government did not seize any drugs, [or the amount seized does not reflect the scale of the offense] the district court [is] required to "approximate the quantity." U.S.S.G. § 2D1.1, comment (n. 12) (Nov. 1992). While the court may rely on a government estimate in approximating the quantity of drugs, see, e.g., U.S. v. Sturmoski, 971 F.2d 452, 462 (10th Cir. 1992), the information underlying the estimate must possess "a minimum indicia of trustworthiness." U.S. v. Cook, 949 F.2d 289, 296 (10th Cir. 1991).

See also United States v. Jackson, 213 F.3d 1269, 1284 (10th Cir. 2000).

In determining a sentence, the court may appropriately consider all sources of information without limitation; the sole touchstone is reliaility. See United States v. Beaulieu, 893 F.2d 1177, 1179 (10th Cir. 1990). Thus, the court may consider information that would be inadmissible at a criminal trial, including reliable hearsay and statements of co-defendants made in separate proceedings. Id. at 1181.

In reviewing the objections in light of the evidence

8

supplied by the government, the court believes the government has sustained its burden of proof as to the drug quantity for the base offense level.  There is no dispute that the defendant was involved in the alleged drug conspiracy or that substantial amounts of drugs were sold.  The defendant's only problem with the findings of the presentence report concerns the amount of drugs attributable to him and the degree of his participation in the conspiracy.  Having read all of the statements made by the defendant's co-conspirators, the court is persuaded that the amounts attributable to the defendant in the presentence report are correct, with one minor exception that the court will detail in a moment, and that his participation in the conspiracy is as suggested in the presentence report.  The court finds that the information supplied by Adam Guzman, Albers, Howze, Jacob, Patterson, Patrick and Maximo Guzman has the minimal indicia of reliability necessary for sentencing purposes.  Even if the court were to reduce the amounts contained in the presentence by one-half, the defendant's offense level would remain at level 38.

With this determination, the court must overrule and deny objections 3, 4, 5, 15, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29 and supp. objection nos. 3, 5, 6 and 7.  The court specifically denies objections 18, 19, 20, 21, 22, 23, 24, 25,

26 and 28 as well as supplemental objections 5, 6 and 7 because the statements of Albers support the findings made in the presentence report in paragraphs 56, 58, 59, 60, 61, 62, 63, 64 and 65.  The court further notes that the information supplied by Albers on several of these matters is corroborated by others in other statements.  The court specifically denies objection 4 because the statements of Howse support the findings made in the presentence report contained in paragraph 27.  Finally, the court specifically denies objections 3 and 15 because the statements of several co-conspirators support the findings made in the presentence report contained in paragraphs 26, 52 and 53.

In his supplemental memorandum, the defendant has made some further suggestions concerning the amount of drugs attributable to him.  The court notes that, in making the aforementioned determinations, we have carefully considered these matters. The court has attempted to resolve the various factual disputes in a manner that accurately reflects the amount of drugs that were involved in this conspiracy.  For example, the defendant has questioned the amounts noted by Patterson.  The defendant suggests that the amounts contained in paragraph 53 of the presentence report are not found in the grand jury testimony of Patterson.  The defendant is correct.  These amounts came from a statement made by Patterson to FBI Task Force Agent Mike

Metzler on October 26, 2000. Patterson did subsequently make different statements to the grand jury. The probation officer, in an effort to resolve these inconsistencies, did not calculate the amount of drugs attributable to the defendant based upon the earlier statement made by Patterson to Agent Metzler. The court agrees that the statements of the various participants were not always consistent, but we believe that the amounts determined in the presentence report are reasonably calculated.

The defendant, in his supplemental memorandum, has also suggested that the court should not find the estimates of co-defendant Albers reliable because the government "did not allow Albers reduction motion." The defendant further suggests that Albers is not a "trustworthy source of information." The court is not persuaded that Albers' statements should be disregarded. Albers was an important part of this conspiracy and he possessed significant knowledge about the scope and nature of the conspiracy. The government did object to Albers receiving the safety valve at sentencing because he had engaged in some additional criminal conduct following his guilty plea, not because he was determined to be unreliable. In fact, the government did ultimately file a motion for reduction of sentence pursuant to Fed.R.Crim.P. 35 on Albers. In sum, the court believes that the statements made by Albers have a

sufficient indicia of reliability.

The defendant has also objected to the information contained in paragraphs 29 and 66 of the presentence report in objections 5 and 27 because "he has no knowledge of this activity." The court finds support for the information contained in those paragraphs in the documents provided by the government. Accordingly, the court must deny these objections.

In supplemental objection 4, the defendant contends that he was not part of the conspiracy set forth in paragraphs 41 to 51 of the presentence report because he was in jail during the period noted in those paragraphs. In an abundance of caution, the court shall not attribute the amounts noted in those paragraphs to the defendant. This finding subtracts a total of 285.35 grams of marijuana from the aforementioned totals. This decision has no impact on the defendant's base offense level.

In objection 17 and supplemental objection 3, the defendant objects to paragraph 55 of the presentence report because co-defendant Albers "turned over only three ounces of drugs" to the police. Paragraph 55 reads as follows:

> On July 11, 2001, Michael Albers was debriefed by Task Force Agent (TFA) Mike Metzler. Albers explained he knew Banda when he (Banda) was supplying methamphetamine to Albers' brother, Josh Hanson. After Hanson was arrested, Albers sold three ounces of methamphetamine Hanson purchased from Banda previously. Albers used the money from the sale of the three ounces to pay Hanson's drug debt to Banda.

12

As with several of the defendant's objections, the court is at a loss to understand the nature of this objection. The point made by the defendant may be accurate, but it does nothing to contest the information contained in paragraph 55. The information contained in the paragraph is supported by the evidence supplied by the government. Moreover, this paragraph shows the relationship between the defendant and Albers. Accordingly, this objection must be denied.

In objections 6, 7, 10, 11, 12 and 14, the defendant contends that the amount of methamphetamine considered in various parts of the presentence report should be reduced because the methamphetamine in question was a mixture, not pure methamphetamine. The probation office has noted in the presentence report that the various references to methamphetamine were to mixtures, not pure methamphetamine. In calculating the weight of the drugs to be attributed to the defendant, the probation office has transformed the methamphetamine to marijuana using the formula for methamphetamine that is a mixture. In sum, the court finds no merit to any of these objections by the defendant concerning the methamphetamine. Accordingly, they must be denied.

The court finds it unnecessary to rule on objection no. 21. A decision on this objection will have no impact on the

defendant's sentence.

The court shall next turn to our previous determination that the defendant's base offense level should be increased by three levels as a manager and supervisor under U.S.S.G. § 3B1.1. In reaching that conclusion, the court inadvertently referred to § 3B1.1(c) which provides for only a two-level enhancement for a defendant found to be "an organizer, leader, manager, or supervisor" in any criminal activity. In its order of January 29, 2004, the Tenth Circuit directed this court to clarify its earlier finding regarding the proper adjustment in the offense level pursuant to § 3B1.1.

The court now makes clear that it intended to apply a three-level enhancement to the defendant under § 3B1.1(b) as a manager and supervisor of criminal activity involving five or more participants. The evidence before the court clearly indicates that the defendant was a manager and supervisor of this conspiracy. The evidence shows that the defendant was the leader of the conspiracy while Adam Guzman was incarcerated. There is also evidence that during other periods the defendant exercised significant control over others in the conspiracy. He controlled the monies generated by the conspiracy, and he directed the distribution of the narcotics. In sum, the court now finds that the enhancement under § 3B1.1(b) is appropriate

here.

With the aforementioned decisions, the defendant's offense level is 38 and his criminal history category is III. The defendant's guideline range is 292 to 365 months.

The defendant has asked the court to consider his post-conviction rehabilitation efforts under 18 U.S.C. § 3553(a). The court will do so. Whether the conduct of the defendant since conviction is sufficient to justify a downward departure under the old mandatory system does not foreclose the court from considering this factor under § 3553. Post-offense rehabilitation can only be an appropriate ground for downward departure if the efforts are of a magnitude that the defendant's situation cannot be considered typical of those where an acceptance of responsibility is granted. United States v. Whitaker, 152 F.3d 1238, 1240 (10th Cir. 1998). In other words, post-offense rehabilitation may not serve as a basis for departure unless it is present to an exceptional degree. Unite States v. Benally, 215 F.3d 1068, 1075 (10th Cir. 2000). The court finds the post-offense rehabilitation by the defendant commendable, but not exceptional. Nevertheless, the court shall consider it by examining the appropriate factors under § 3553(a). The court will also consider the government's motion to reduce sentence for substantial assistance pursuant to

U.S.S.G. § 5K1.1.

In determining the sentence imposed, the court carefully consulted the application of the guidelines and has taken them into account. The court has decided that the appropriate sentence for this case is 150 months. The court believes that this sentence will meet the sentencing objectives of deterrence, punishment, rehabilitation, and protection of the public. Further, the court believes that this is a fair and reasonable sentence, and it is a sentence sufficient, but not greater than, necessary to comply with the aforementioned sentencing purposes in light of all of the circumstances in this case, including the nature and circumstances of the offense and the history and characteristics of the defendant.

**IT IS SO ORDERED.**

Dated this 25th day of May, 2005 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge